

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00090-CV

_____

IN THE INTEREST OF X.R.L., S.J.S., AND Z.N.S., CHILDREN

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2013-2155-DR

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

The trial court terminated Evelyn's[1] parental rights to her three minor children, X.R.L., S.J.S., and Z.N.S., after finding that the termination was warranted pursuant to Section 161.001(1)(D), (E), (N), (O), and (P) of the Texas Family Code and that termination was in the best interests of the children. Evelyn appeals this ruling, contending that the evidence is factually insufficient to support the trial court's finding that termination was in the children's best interests. After reviewing the record, we affirm the trial court's judgment.

## I.      Factual Background

Evelyn, the sole appellant in this case, is the mother of all three children. Although Bradley is the father of S.J.S. and Z.N.S., he is not the father of X.R.L., whose father's identity is not known.[2] At the time of the trials in this matter, X.R.L. was five years old, S.J.S. was four years old, and Z.N.S. was two years old.

Kendra Sorey-Carreon, an investigator for the Department of Family and Protective Services (Department), testified that in May 2013, the Department received an intake wherein it was alleged that Evelyn had checked herself into a hospital and left her children in the care of their great-grandmother, a person suffering from "Alzheimer dementia" and who was not a suitable

---

[1]In order to protect the children's privacy, we will refer to the appellant mother by the pseudonym Evelyn, the father of two of the children as Bradley, and to the children by the initials, X.R.L., S.J.S., and Z.N.S. *See* TEX. R. APP. P. 9.8.

[2]A trial was conducted September 22, 2014, regarding the parental rights of Evelyn and Bradley as to S.J.S. and Z.N.S., and the trial court entered an interlocutory order of termination October 24, 2014, regarding that matter. At the time of that trial, conclusive evidence of the identity of X.R.L.'s father had not yet been confirmed, and the court severed the trial regarding a termination of the parental rights to that child from the trial pertaining to the other children. The trial court entered a final order in this case December 3, 2014, in the case involving all three children. This final order terminated the parental rights of Evelyn as to all three children, the parental rights of Bradley as to S.J.S. and Z.N.S., and the parental rights of the unknown father to X.R.L.

caregiver for the children due to a past history of illicit drug use. At that time, the Department opened a Family Based Services (FBS) case, and the court ordered Evelyn to comply with Department directives for services to be rendered. Sorey-Carreon testified that Evelyn and the children had been "moving around quite a bit from San Antonio and back to Upshur . . . and her children ended up in Longview." She testified further that during the FBS case, there was another investigation in San Antonio in September 2013, and the intake from that investigation alleged that Evelyn, Bradley, and the children were living in a motel, that Evelyn and Bradley were "seeking out drugs[,] . . . and that the children looked dirty, malnourished, [and] weren't cared for."

Sorey-Carreon went on to relate that the Department received an intake October 24, 2013, that Evelyn and her children were seeking shelter at the East Texas Women's Center (Center). Evelyn did not qualify for the Center's program, but the Department's contact at the Center was concerned about the condition and well-being of the children. Sorey-Carreon went to the Center and, while there, discovered that "[a]ll of the children were very dirty. Their clothes were ill fitting. They all smelled strongly of urine."

According to Sorey-Carreon's testimony, Evelyn suffered from depression and bipolar disorder, but she had not taken her medication for a month. Evelyn admitted that she did not have money or a place to go. Evelyn told Sorey-Carreon at that time that she was "overwhelmed" and "had been experiencing suicidal thoughts, and she just said she couldn't take care of her children anymore." Even though Evelyn refused to submit to a drug test, she admitted to recently using methamphetamine and synthetic marihuana, and she indicated that the synthetic marihuana had

3

caused seizures. Based on these issues and related history, the children were removed from Evelyn's custody and placed in foster care. Department caseworker Dionne Jordan testified that the children were tested for exposure to drugs at the time of their removal due to Evelyn's drug use, that X.R.L. tested positive for exposure to or use of cocaine and methamphetamine, and that S.J.S. tested positive for cocaine.

Jordan also testified that Evelyn was ordered to complete a service plan devised by the Department which included weekly visitation with the children, maintaining a stable home environment, submitting to random drug testing, attending court hearings, attending appropriate drug treatment and mental health treatment sessions, obtaining and maintaining employment, attending two counseling sessions per month, maintaining sobriety, completing psychological testing, and maintaining consistent contact with the Department. Jordan testified that although Evelyn submitted to a psychological evaluation, she only attended one counseling session. She described Evelyn as someone who "has refused" to comply with the service plan that she was ordered to complete.

Of the eight randomly requested tests to reveal drug use, Evelyn did not show up for three. While there were times that Evelyn lacked transportation, Jordan testified that Evelyn did not request transportation to these drug tests, even though she knew the Department would assist with her transportation. Evelyn tested positive for the consumption of cocaine, methamphetamine, and marihuana "[t]hroughout the case."[3]

---

[3]Evelyn tested positive for use of marihuana September 26, 2013. She tested positive for cocaine, methamphetamine, and opiates November 6, 2013. On May 20, 2014, prior to the birth of her fourth child, Evelyn tested positive for cocaine and methamphetamine. On June 25, 2014, about one month after the birth of her fourth child, she tested

4

During the pendency of the case, Evelyn visited the children only two or three times out of the twenty-five to thirty available opportunities for her to conduct visitation. Jordan testified that Evelyn never contacted the Department to request transportation. On one occasion, Evelyn was in the Department's office for a conference, and she was supposed to visit the children afterward; even though Evelyn attended the conference, she did not thereafter stay to see the children. The last time Evelyn saw the children was in July 2014.

Jordan testified that Evelyn has not maintained consistent contact with the Department and that Evelyn failed to offer or provide any money, clothing, or presents for the children. Though, at one point during the case, Bradley and Evelyn lived together in a hotel during June and July 2014, Evelyn failed to provide a "clear consistent address" and reported several different addresses. Jordan testified that Evelyn did not indicate either that she had a home for the children or that she was employed.

According to Meredith Rowland, a volunteer with the Court-Appointed Special Advocates (CASA) who was assigned to this case, Evelyn's relationship with Bradley was "on again, off again quite a bit." Evelyn related that Bradley has a history of mental illness and that he attempted suicide earlier in 2014.

Evelyn and her relatives were found to not be appropriate candidates as care-givers for the children. The Department's plans for the children were adoption, and Rowland knew of no reason that the children could not be adopted. Jordan testified that although the Department was open to

positive for cocaine and methamphetamine. Evelyn's fourth child, mentioned in this footnote, was not the subject of this suit but has been removed from Evelyn's custody and is in the care of the Department.

family members adopting the children, no suitable relatives had been found for that purpose as of the time of trial.

Due to some of the behavior manifested by X.R.L.,[4] the Department placed X.R.L. in a therapeutic foster home, separate from her siblings. In addition to the extraordinary behavior by X.R.L., she was also acting out sexually and had made an outcry of sexual abuse against Bradley, who was prohibited from further contact with her. Jordan testified that the child had begun counseling, and while she characterized her improvement as slight, Rowland also testified that X.R.L. was doing "significantly" better.

Rowland testified that she had engaged in several telephone conversations with Evelyn during the case, but Rowland's last contact with her came in July 2014 because, around that time, Evelyn's telephone was disconnected. She testified that Evelyn could not provide a safe home for the children. Rowland recommended that Evelyn's parental rights be terminated due to her lack of employment, lack of housing and failure to maintain a stable address and Evelyn's ongoing drug use.

After hearing testimony and the arguments of counsel, the trial court terminated Evelyn's parental rights to X.R.L., S.J.S., and Z.N.S. Evelyn filed this appeal.

## II. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Due to the gravity of the parent-child relationship, "we strictly scrutinize parental rights termination proceedings." *In re S.K.A.*,

---

[4]This conduct included "tantrums," urinating on herself, and pulling her own hair out in anger.

236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20). To terminate a party's parental rights, the trial court must find, by clear and convincing evidence, (1) that one of the statutory grounds supports termination and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014). Here, Evelyn only challenges the trial court's finding that termination was in the children's best interests.

Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). The inquiry to be made in a factual sufficiency review is whether the evidence, viewed in a neutral light, "is such that a fact-finder could reasonably form a firm believe or conviction about the truth of the . . . allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *J.L.B.*, 349 S.W.3d at 846. If, in weighing disputed evidence, the fact-finder could have reasonably resolved the conflicts to form a firm conviction that the allegations constituting the grounds for termination were true, then the evidence is factually sufficient, and the termination findings must be upheld. *C.H.*, 89 S.W.3d at 18–19; *see J.F.C.*, 96 S.W.3d at 266. In applying this standard in light of the clear and convincing standard, we must be careful not to "'be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt.'" *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

While a parent's rights to "'the companionship, care, custody, and management,'" *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)),

of his children are constitutional interests "far more precious than any property right," "'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A child's emotional and physical interests must not be sacrificed merely to preserve parental rights. *C.H.*, 89 S.W.3d at 26.

III. **Weighing the Factors to Determine Best Interests of the Children**

In her sole point of error, Evelyn contends that the evidence is factually insufficient to support the trial court's finding that termination was in the children's best interests.

There is a strong presumption that preservation of the conservatorship of the parents is the paramount means to serve a child's best interest; however, clear and convincing evidence to the contrary may overcome the presumption. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). In deciding whether termination is in the best interest of the child, the trial court may consider this nonexclusive list of factors:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *K.S.*, 420 S.W.3d at 855. It is unnecessary to prove all of these factors as a condition precedent to parental-rights termination. *C.H.*, 89 S.W.3d at 27.

Also, evidence offered to prove grounds for termination, contact between the natural parent and child, and degree of financial support are all relevant to determining if termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 28; *In re J.W.M.*, 153 S.W.3d 541, 548–49 (Tex. App.—Amarillo 2004, pet. denied) ("While the prospect of adoption into a stable home cannot alone be said to be a determinative factor, it clearly is among the factors the court properly could consider."). "A parent's lack of education, training, or misfortune is considered when reviewing excuses for acts or omissions of a parent; however, these considerations do not negate evidence tending to show that termination is in the child's best interest." *In re S.H.A.*, 728 S.W.2d 73, 89–90 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

In this case, the first *Holley* factor is neutral because no evidence of the children's desires was presented. *See In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012). A description of the parent's love for or interest in the children and the fact that she visited them and tried to comply with her service plan does not provide us with evidence concerning the desires of the children themselves.

At the time of trial, the children's ages were five, four, and two. Jordan testified that all three of the children were very dirty and wearing clothes that did not fit them. Possibly due to sexual abuse by Bradley, X.R.L. had several behavioral issues that required her to attend counseling as well as be placed in a therapeutic foster home. Due to their very young ages, the emotional and physical needs of the children now and in the future are great, and the evidence in

this case demonstrated that Evelyn had very little to no income, no employment, no reliable transportation, and no stable residence, and would not likely be able to meet the children's needs. "'A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.'" *In re Z.M.*, No. 06-14-00068-CV, 2015 WL 293395, at *9 (Tex. App.—Texarkana Jan. 23, 2015, no pet. h.) (quoting *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan 9, 2012, pet. denied) (mem. op.)). We find that the second *Holley* factor weighs in favor of termination.

As to the third and fourth *Holley* factors, "'[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct.'" *Id.* (quoting *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2004, pet. denied) (mem. op.) (citing *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue.")). Although there was some evidence that Evelyn cared for her children and attempted to be a good parent, she admitted to using illicit drugs while the children were in her care, and she failed numerous drug tests, even tests conducted after the Department removed the children from her care. The children were moved around quite a bit by her, and there was also evidence that X.R.L. had been sexually abused by Bradley, a mentally unstable man with whom Evelyn lived throughout the pendency of the case involving her children. Rowland testified that termination was in the children's best interests. Evelyn's history of drug use, her failure to remain drug free, her inability or unwillingness to complete counseling, as well as her seeming disinterest in visiting her children speak volumes about her parenting skills. All of these factors suggest a substantial likelihood that

10

Evelyn would be a danger to the children in the future or put them in a possibly harmful situation. We find that the third and fourth *Holley* factors weigh in favor of termination.

As to the fifth *Holley* factor, although the Department had programs available to assist Evelyn to promote the best interests of the children, she was either unwilling or unable to participate and take advantage of most of them. To promote her children's best interests, she needed to overcome her apparent addiction to drugs, find stable housing, and locate employment; however, she demonstrated very little desire or impetus to accomplish any of those goals. Rather, Evelyn failed to show up for visitation with her children, failed to appear for numerous drug tests, and did not complete the required counseling and evaluations. We find that the fifth *Holley* factor weighs in favor of termination.

Evelyn did not attend the trial, and there was no evidence that Evelyn had plans for the children in the event they were returned to her. Jordan and Rowland testified that Evelyn had a history of inconstancy of her living arrangements, failing to maintain a consistent address even during the pendency of the case for termination. Evelyn told the Department that she had nowhere for the children to stay. The Department introduced evidence that all three children had been placed in foster homes, that X.R.L. was improving in her therapeutic placement, and that the children would be placed for adoption. We find that the sixth and seventh *Holley* factors weigh in favor of termination.

Even though it was apparent from the record that Evelyn had limited means and a lack of family support, Evelyn's history of drug abuse, her continued relationship with Bradley (despite the allegations of sexual misconduct with one of the children), her lack of income to aid in the

11

support of the children, the absence of a suitable home, her neglect of the children's hygiene, her failure to visit the children, and other acts indicated Evelyn's existing parent-child relationships were not proper ones. The eighth and ninth *Holley* factors weigh in favor of termination.

Considering the *Holley* factors, and in light of all the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that termination of Evelyn's parental rights was in the best interests of the children.

## IV. Conclusion

We conclude that the evidence was factually sufficient to support the finding that termination of Evelyn's parent-child relationships were in the best interests of the children.

We affirm the judgment of the trial court.


                                            Bailey C. Moseley
                                            Justice


Date Submitted:     March 10, 2015
Date Decided:       April 1, 2015