

# NUMBER 13-16-00277-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF H.P. AND F.P., CHILDREN

### On appeal from the County Court at Law No. 5 of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Perkes and Longoria**
**Memorandum Opinion by Justice Longoria**

Appellants N.P. ("Father") and D.P. ("Mother") appeal a final judgment that terminated their parental rights over their children, H.P. and F.P. (collectively, "the children").[1]  We affirm.

## I. BACKGROUND

### A. Events Leading to Removal

---

[1] We utilize aliases to refer to the children, appellants, and other persons involved to protect the children's privacy.  *See* TEX. R. APP. P. 9.8(b).

In early 2015 appellants and their children resided at a homeless shelter in Nueces County because a fire destroyed their residence. On March 6, 2015, case managers at the shelter responded to reports that appellants were having an argument and discovered they were using heroin while caring for the children. Appellants would take turns watching the children while the other went into the bathroom to inject heroin. Shelter staff found ten syringes in appellants' room which were accessible to the children. The shelter notified the Texas Department of Family and Protective Services ("the Department").

Two investigators from the Department interviewed appellants separately the same day. Father admitted that he injected heroin two or three times a day and that Mother injected it approximately ten times a day. Mother confirmed in her interview that she used heroin ten times a day and that she and Father injected between $50 and $100 worth of heroin each day. She also told the investigator that the family's only income was the $50–$400 a night she earned dancing at a gentlemen's club. After completing the interviews, the Department removed the children from appellants' care. H.P. was two years old and F.P. was eight months old at the time.

The Department's investigators immediately took both children to the hospital for treatment of a respiratory infection. F.P. was also given medication to treat a thyroid condition which, according to the records of Father's interview, had gone untreated since the fire destroyed her medication. Preliminary drug tests of both children were negative, but F.P. tested positive for heroin after more extensive testing. The Department placed both children in the Ark Shelter in Corpus Christi, and they remained there for the pendency of the case.

**B. Post-Removal**

### 1. Appellants' Initial Activity in Texas

The trial court ordered both appellants to comply with each requirement set out in the family service plans created by the Department to regain custody of the children. The court further ordered appellants to participate in a drug assessment and to follow all of the resulting recommendations.

In the weeks that followed, neither appellant signed the service plans created by the Department. Both appellants were tested for drugs and tested positive for heroin. Mother completed a drug assessment and was referred to inpatient treatment but did not receive it. The record reflects that Mother initially had trouble finding a program with an opening. However, Department caseworker Monica Alaniz testified that Mother was unwilling to attend treatment when there was an opening because it meant separation from Father. Father attended inpatient drug treatment for five days before leaving because it meant separation from Mother and the children. Mother tested positive for heroin again on April 23, 2015.

Appellants were unable to stay in the original shelter following the removal of the children, and had difficulty finding another residence in the weeks that followed. They were unable to enter other shelters because of their lack of identification or their drug use. They were also unwilling to be separated even though some shelters do not accept couples. At one point during this time, appellants lived in a tent near the Department's office.

Despite their difficulties in obtaining shelter, appellants attended every scheduled visitation with their children. Alaniz testified at the termination hearing that both parents acted appropriately towards the children during the visitations that she witnessed. The

3

record also reflects that the visit on March 28, 2015 ended early because the Department caseworker monitoring the visit observed Mother "falling asleep during the visit and was taking a long time to complete easy tasks."

Father also had legal difficulties during this time period; he was arrested less than a month after the removal for the offenses of injury to an elderly individual and assault involving family violence. At the termination hearing, Father testified that the charges arose from an incident in which he defended the children's grandmother ("Maternal Grandmother") from an assault. He further testified that he had an outstanding charge for possession of a controlled substance dating from before the removal.

After Father was released on bond, appellants spoke to Alaniz about returning to Pennsylvania. Appellants explained to her that they had pending criminal charges there that they wished to resolve before doing what was necessary to regain custody of the children. Alaniz testified that she and her superiors at the Department viewed appellants' request as a positive step and agreed to help. The Department provided appellants with one-way bus tickets to Pennsylvania while the children remained in the Department's custody in Corpus Christi. Neither parent had completed any of the services required by the family service plans at this time.

### 2. Moves to Pennsylvania and Back to Texas

Appellants surrendered to authorities within days of their arrival in Pennsylvania. At this point, appellants' paths diverged. Father spent two months in jail on a pending charge for conspiracy to commit burglary. During his incarceration, Father completed a parenting class. Father was released on bond but was arrested again and extradited back to Texas for violating his bond conditions by going to Pennsylvania. He later pled

true to his pending charges in Texas, and the Texas court placed him on deferred-adjudication community supervision. After disposing of his Texas charges, Father obtained a job at the Corpus Christi Grain Company and attempted unsuccessfully to find a stable residence.

Mother served three months in Pennsylvania jail and lived with her father there after her release. Mother later overdosed on an unspecified substance and was briefly incarcerated again. At that time, Mother told her father that she was planning on entering inpatient drug treatment after her release and intended to file for divorce from Father. Alaniz, however, testified that she never received any documentation from Pennsylvania showing that Mother completed services there except for a drug assessment while she was still incarcerated. Alaniz further testified that Mother's father told Alaniz that Mother "never stopped using while she was here in Pennsylvania."

Mother returned to Corpus Christi in December of 2015 to visit the children for the Christmas holidays. According to Maternal Grandmother, Mother met up with Father during this time and used drugs with him again. On December 26, 2015, Mother was arrested for assaulting Father, evading arrest, and theft. Father was arrested at the same time for failure to properly identify himself and on a warrant issued pursuant to a motion to revoke his probation. Father was arrested again after his release, this time on a warrant from Pennsylvania for failing to appear.

Father was incarcerated at the time of the termination hearing but appeared in person and by counsel. Mother appeared by counsel. Testimony at trial revealed that Mother had recently spent time in an inpatient drug treatment facility but could not be

located after she left the facility.[2]

## C. Termination Hearing

Following a bench trial, the trial court found by clear and convincing evidence that Mother committed five of the statutory grounds for termination and that termination was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P), (b)(2) (West, Westlaw through 2015 R.S.). Regarding Father, the trial court found by clear and convincing evidence that he committed six of the statutory grounds for termination and that termination was in the best interests of the children. *See id.* § 161.001(b)(1)(D), (E), (N), (O), (P), (L)(ix), (b)(2). This appeal followed.

## II. DISCUSSION

Appellants argue in two issues that the evidence is legally and factually insufficient to support the trial court's findings that (1) they committed any of the statutory grounds for termination and (2) termination is in the best interests of the children. *See id.* § 161.001(b)(1), (2).

## A. Termination Standard of Review and Applicable Law

The natural right which exists between parents and their children is of constitutional dimensions, and courts must strictly scrutinize proceedings to terminate that right. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). To properly protect the right at issue, due process requires courts to apply the clear and convincing standard of proof. *Id.* The Texas Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the

---

[2] We abated this case for the trial court to determine whether Mother could be located and whether she had abandoned her appeal. Mother appeared at the abatement hearing and testified that she wished to continue with this appeal, and the trial court entered findings consistent with her testimony. We therefore address Mother's appeal on the merits.

truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2015 R.S.).

The clear-and-convincing standard heightens our review of the legal and factual sufficiency of the evidence. In a legal sufficiency review under this standard we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* As a corollary to this requirement, we disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *Id.* We are not, however, required to disregard undisputed facts which do not support the trial court's finding. *Id.*

When performing a factual sufficiency review we give due consideration to the evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). A factual sufficiency review also requires us to determine whether a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The distinction with a legal sufficiency review is that factual sufficiency includes disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). In applying this standard our review should "not be so rigorous that the only factfindings that could withstand review are those established beyond a

reasonable doubt." *In re H.R.M.*, 209 S.W.3d at 108.

We apply these standards to determine whether the Department proved by clear and convincing evidence: (1) appellants committed one or more of the statutory acts or omissions set out in section 161.001(b)(1) of the Texas Family Code and (2) termination is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2).

## B. Statutory Grounds for Termination

By their first issue, both appellants argue the evidence is legally and factually insufficient to support a finding of any of the predicate grounds for termination under subsections 161.001(b)(1)(D), (E), (N), (O), and (P). Father also challenges the sufficiency of the evidence supporting the finding against him under subsection 161.001(b)(1)(L)(ix). We address appellants' challenges to the sufficiency of the evidence supporting a finding under subsection 161.001(b)(1)(P) first because it is dispositive.

Subsection 161.001(b)(1)(P) allows termination of parental rights on a finding of clear and convincing evidence that a parent:

> used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
>
> (i) failed to complete a court-ordered substance abuse treatment program; or
>
> (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance;

TEX. FAM. CODE ANN. § 161.001(b)(1)(P). The State argues that appellants waived this issue because neither of their briefs included any arguments or citations to the record regarding subsection (P). *See In re J.A.M.R.*, 303 S.W.3d 422, 425 (Tex. App.—Dallas

8

2010, no pet.) (observing that "[b]are assertions of error without argument or authority waive error").

We agree that appellants inadequately briefed their sufficiency argument regarding the court's finding under subsection (P). The failure to offer a substantive analysis or to provide appropriate citations to the record waives an appellate issue. *In re T.T.F.*, 331 S.W.3d 461, 477–78 (Tex. App.—Fort Worth 2010, no pet.); *see* TEX. R. APP. P. 38.1(i). Appellants assert in their briefs that the evidence is insufficient to support a finding under subsection (P), but they offer no argument regarding why the evidence is insufficient that they either (1) failed to complete a court-ordered substance abuse treatment program or (2) completed a treatment program but continued to abuse a controlled substance afterwards. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(P). We hold that both appellants have waived their challenge to the sufficiency of the evidence supporting termination under section 161.001(b)(1)(P). *See In re T.T.F.*, 331 S.W.3d at 477–78; TEX. R. APP. P. 38.1(i).

Because section 161.001(b)(1) requires proof of only one predicate ground to support termination, we do not address the sufficiency of the evidence supporting the trial court's finding under the other subsections. *See In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see also* TEX. R. APP. P. 47.1. We overrule appellants' first issue.

## C. Best Interests of the Children

By their second issue, appellants argue that the evidence is legally and factually insufficient to support the finding that termination was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### 1. Applicable Law

9

The best interest analysis requires us to balance the parent's desire to raise their child with the State's responsibility to promote the child's best interest. *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012). We begin this analysis by indulging a strong presumption that it would best serve the child's best interest to maintain the parent-child bond. *In re O.R.F.*, 417 S.W.3d 24, 39 (Tex. App.—Texarkana 2013, pet. denied) (op. on reh'g). The Department may overcome that presumption by clear and convincing evidence. *Id.* The Texas Supreme Court has articulated the following list of factors for us to consider when performing the best interest analysis:

1. the children's desires;

2. the emotional and physical needs of the children now and in the future;

3. the emotional and physical danger to the children now and in the future;

4. the parenting abilities of the individuals seeking custody;

5. the programs available to assist these individuals to promote the best interest of the children;

6. the plans for the children by these individuals or by the agency seeking custody;

7. the stability of the home or proposed placement;

8. the acts or omissions of the parent that may indicate that the existing parent-child relationship is improper;

9. any excuse for the acts or omissions of the parent.

*In re E.N.C.*, 384 S.W.3d at 807 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). The list of *Holley* factors is not exhaustive, and some factors will not be applicable in a particular case. *In re C.H.*, 89 S.W.3d at 27. Undisputed evidence of just one factor may be enough to support a finding that termination is in the best interest of a child. *Id.* However, "scant evidence relevant to each *Holley* factor will not support a finding." *M.C.*

10

*v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied).

### 2. Analysis

Appellants argue in a short section of their briefs that the evidence is insufficient to support the trial court's best interest finding. They assert that the second and third factors favor them because Father was employed at the time of trial and both parents were affectionate and appropriate with the children during their visits. They also argue that the children will have a stable home because Father testified he had been sober for five months, was employed, and had taken a parenting class. We disagree with appellants that the evidence is insufficient to support the best interest findings because there is substantial evidence relevant to several of the *Holley* factors which supports the trial court's finding that terminating the parental rights of both appellants is in the best interest of the children.

Regarding the second *Holley* factor, "permanence is a paramount consideration for the child's present and future physical and emotional needs." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). As a general matter, a parent who lacks stability, an income, and a home is unable to provide for a child's physical and emotional needs. *In Interest of X.R.L.*, 461 S.W.3d 633, 640 (Tex. App.—Texarkana 2015, no pet.) (internal quotation marks omitted). At the time of the termination hearing, Father was imprisoned and without a stable residence. While Father was employed before his most recent arrest, the trial court could conclude that his imprisonment and the prospect of extradition back to Pennsylvania made continuation in that employment uncertain at best. Mother's whereabouts were unknown at the time of trial, but she had

11

just left an inpatient drug treatment program and had no income or home. The trial court could properly infer that this inability of both appellants to meet the children's needs for a substantial period of time would continue in the future. *See In re J.D.*, 436 S.W.3d at 118 ("A fact finder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future."). The second *Holley* factor supports termination.

Much of the evidence relevant to the second *Holley* factor is also relevant to the third, which looks to the danger to the children now and in the future. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *In re D.W.*, 445 S.W.3d 913, 928 (Tex. App.—Dallas 2014, pet. denied). As we described in greater detail above, appellants subjected the children to a life of uncertainty and instability before the removal and led similar lives during the course of the case. The trial court could properly infer that similar conduct would reoccur in the future if appellants regained custody of the children. *See id.*; *In re J.D.B.*, 435 S.W.3d 452, 467–68 (Tex. App.—Dallas 2014, no pet.).

Also relevant to the potential danger to the children now and in the future is the evidence that appellants ignored the children's medical needs. Immediately after the removal, both children were treated for a respiratory infection. While it is not clear from the record that H.P.'s infection warranted hospitalization, one of the Department's investigators testified that F.P. was wheezing so badly that "as soon as you took her, you could see that she needed medical care." F.P. also needed medication for her thyroid condition, which appellants had apparently allowed to go untreated since the fire. The trial court could conclude that appellants endangered the children by not attending to their

12

medical needs and could infer that this behavior would repeat in the future. *See In re A.T.*, 406 S.W.3d 365, 372 (Tex. App.—Dallas 2013, pet. denied) (holding that there was a danger to the child when the parents did not attend to the child's medical needs).

The trial court could also consider under this factor the strong evidence that appellants consumed illegal drugs before and after the removal of the children. F.P. tested positive for heroin immediately after she was removed from appellants' care. Both appellants tested positive for heroin in the weeks immediately after the removal and continued to use drugs during the course of the case. Mother tested positive for heroin on April 23, 2015, over a month after the removal of the children. Alaniz testified without objection that Mother's father told Alaniz that Mother "never stopped using [heroin] while she was here in Pennsylvania." Maternal Grandmother testified that when Mother returned to Corpus Christi in December 2015, Mother and Father met up and "ended up using [drugs] together." This pattern of illegal drug use during the pendency of the case strongly suggests that appellants are not willing or able to meet the children's need for a safe environment. *See In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The third *Holley* factor weighs in favor of termination.

The fourth *Holley* factor looks to the parenting abilities of the individuals seeking custody. While we acknowledge that appellants were appropriately caring during their visits with the children, there is other evidence relevant to this factor which supports the trial court's best interest finding. First, the evidence that we discussed under the second factor regarding appellants' inability to meet the needs of their children is also relevant to their parenting abilities. *See In re D.W.*, 445 S.W.3d at 926. Moreover, "[a] parent's inability to provide adequate care for a child, lack of parenting skills, and poor judgment

13

may be considered when looking at the child's best interests." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). The trial court could consider that appellants spent a substantial portion of their very limited income to purchase heroin rather than on treating the children's illnesses or on other necessities. *See id.* The fourth *Holley* factor weighs in favor of termination.

The fifth *Holley* factor looks to the programs available to the individuals seeking custody to promote the best interest of the children. Mother completed a drug assessment, but she did not complete inpatient treatment as recommended by the assessment. Mother also did not begin or complete counseling sessions or any of the other programs available to her through the family service plan. Some of her failure to complete services is likely the result of her imprisonment in Pennsylvania, but we cannot ignore that she did not make use of almost all of the programs available to her. *See In re A.C.*, 394 S.W.3d at 642 (holding that termination was in the child's best interest when the mother did not complete a drug treatment program). Father entered a drug treatment program but left after five days because staying in the program would mean he would have minimal contact with Mother and the children. Father did complete a parenting class while he was in jail in Pennsylvania, but he did not complete drug treatment, counseling, or any of the other services specified by the family service plan. *See id.* The fifth *Holley* factor weighs in favor of termination.

The sixth *Holley* factor addresses the plans for the children by the individuals or agency seeking custody. At the time of trial the children remained in the Ark Shelter. The Department's plans for the children were to seek adoption, but the Department had not yet found a family willing to adopt the children. Mother was not present to testify regarding

her plans for the children, but Father testified that he intended to do what was necessary to regain custody of them as soon as he was released from jail. Father, however, had no immediate plans for the children's care while he was still incarcerated. We acknowledge Father's stated desire to turn his life around, but the trial court was free to reject his assurances that he would provide a stable home in the future. *See In re J.D.*, 436 S.W.3d at 120; *In re A.M.*, 385 S.W.3d 74, 83 (Tex. App.—Waco 2012, pet. denied). The sixth *Holley* factor weighs in favor of termination.

The seventh *Holley* factor addresses the stability of the home or the proposed placement. At the time of the termination hearing there was no proposed placement for the children, and neither appellant had established a home for them. The seventh *Holley* factors is neutral regarding termination.

The eighth *Holley* factor is concerned with any acts or omissions which may indicate that the parent-child relationship is improper. We consider any excuses for those acts or omissions under the ninth factor. As we discussed in greater detail above, appellants failed to maintain stable housing or employment during the course of the case and endangered the children by not seeing to their medical needs. Furthermore, both appellants were arrested on several occasions for committing criminal offenses before and after coming to Texas, behavior which also subjected the children to a life of instability and uncertainty. *See In re J.D.*, 436 S.W.3d at 121. Appellants offered no excuses for these acts and omissions in their briefs. The eighth and ninth factors weigh in favor of termination.

In summary, after a thorough review of the record in the light most favorable to the trial court's verdict, we conclude the evidence is legally sufficient because a reasonable

15

trier of fact could form a firm belief or conviction that termination was in the best interest of both children. *See In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually sufficient because the disputed evidence is not so significant it would prevent a reasonable factfinder from forming a firm belief or conviction that termination was in the best interests of the children. *See In re H.R.M.*, 209 S.W.3d at 108.

We overrule appellants' second issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA,
Justice

Delivered and filed the
6th day of October, 2016.