

# NUMBER 13-19-00217-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF L.A.T., A CHILD

### On appeal from the 267th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION
### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Benavides

Appellant A.M.T. (Mother) challenges the termination of her parental rights to her child, L.A.T.[1]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), & (b)(2).  By three issues, Mother argues:  (1) the evidence was insufficient under § 161.001(b)(1)(E); (2) termination under § 161.001(b)(1)(O) was not valid because Mother was in substantial

---

[1]  To protect the identity of the minor child, we will utilize aliases for the child and refer to A.M.T. as Mother.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  Although both parents were named in the petition, Mother is the only parent to appeal the trial court's judgment at this time.  Therefore, this Court will only discuss the trial court's judgment as it pertains to Mother.

compliance with her service plan; and (3) termination is not in L.A.T.'s best interest. We affirm.

## I. BACKGROUND

### A. Procedural History

The Department of Family and Protective Services (the Department) filed its petition for protection and termination of Mother's parental rights in March 2018, when L.A.T. was born with amphetamines in his system.[2] Mother also tested positive for amphetamines at the time of L.A.T.'s birth.

In April 2019, a trial was held. Following its conclusion, the trial court found that Mother violated family code sections 161.001(b)(1)(E) and (O) and that termination of Mother's parental rights was in the best interests of L.A.T. *See id.*

### B. Trial Testimony

During the trial, the Department put on multiple witnesses who testified about the allegations regarding Mother.

Mother testified first. She admitted she had little to no prenatal care for L.A.T. because she only found out she was pregnant three months before his birth. Mother agreed she tested positive for methamphetamine at the time of L.A.T.'s birth, but stated she had not used methamphetamine. She then admitted that she used methamphetamine before L.A.T. was born, but not after she found out she was pregnant. Mother also testified regarding her two other children, T.H.R. and R.A.K. Both older

---

[2] At the time of the original petition, J.M. was named as the father. However, DNA testing revealed that J.M. was not the father of L.A.T. and he was subsequently dismissed. The Department filed an amended petition naming "Unknown" as the alleged father. At the time of this trial, L.A.T.'s father remained unknown. The trial court granted an interlocutory appeal as to Mother and left the unknown father's case pending to determine his identity.

children had been involved with the Department, and due to the Department's involvement, Mother did not have custody of the two older children. She stated T.H.R. was removed from her care as an infant due to her drug use, and she voluntarily relinquished her rights to T.H.R., who now resided with the father and grandmother. Mother explained she gave guardianship rights for R.A.K. to her father, that she had tested positive for marijuana when she was pregnant with R.A.K., and that R.A.K. was removed due to domestic violence. Mother stated she still has parental rights to R.A.K. but had not seen the child since May 2016.

Regarding the court ordered service plan, Mother stated she has two makeup parenting classes to complete the parenting skills program. Mother said she has been participating in substance abuse counseling, but agreed she tested positive for methamphetamine multiple times during the pendency of the Department's case. Mother told the trial court that she was due to start a ninety-day inpatient drug rehabilitation program through her criminal probation. She explained that she had been arrested two times during the pendency of this case for drug-related offenses and tested positive for drugs while on probation. Mother did not attend a mental health intake appointment, stating that "her ride got messed up," even though her Department caseworker had offered to arrange transportation for her.

Mother told the trial court that she owns a cleaning business and works at a local store in the city in which she resides. She agreed that she believed her brother, Jaime Taylor, with whom L.A.T. resides, was a good caretaker until she was "informed of L.A.T.'s

3

medical issues[3]" while she was last incarcerated. Mother believes L.A.T. will be safe with her once she completes her rehabilitation program.

On cross-examination, Mother explained that drug addiction is a "disease" and she remained clean for three and half years after a prior rehabilitation trip. Mother admitted that from April to August 2018, she was homeless, using methamphetamine, and attended no visits with L.A.T. Mother told the trial court that she already has a sponsor lined up for when she completes her rehabilitation program and wants to start mental health services. She asked the trial court to allow an extension of the case in order for her to "re-learn and re-apply" a sober living lifestyle.

Mother's probation officer, Kathy Patton, testified next. She told the trial court that Mother was not in compliance with the conditions of her probation as of February 2019. Patton explained that Mother began outpatient treatment, but was not consistent with counseling and had issues reporting to probation. Mother had tested positive for methamphetamine and marijuana. Patton agreed that Mother would be attending a ninety-day inpatient rehabilitation program as part of probation.

Mother's Department caseworker, Megan Morales, also testified. Morales explained that she began working with Mother in January 2019, but had reviewed the prior caseworker's notes and attended internal staff meetings regarding Mother's case. She agreed that she had at least monthly contact with Mother. Morales asked the trial court to extend the statutory deadlines on behalf of the father in order to allow the Department to determine his identity, but told the trial court she was not asking for an

---

[3] Mother does not explain what "medical issues" she is referring to in her testimony.

4

extension of the case for Mother due to her lack of compliance.

Morales explained that in February 2019, she had Mother complete a drug and alcohol assessment, which recommended inpatient treatment. Mother said she called the program Morales recommended and was placed on a waitlist. When Morales called to verify Mother was on a waitlist, the program said Mother had not called and was not on a waitlist. Morales called a second time, and was able to establish that Mother had contacted the outpatient program, not the inpatient program as directed, and due to the time that had passed and Mother's statement to the facility that she was sober, Mother could not be recommended for inpatient treatment. As of the date of the hearing, Mother had not completed the outpatient treatment. Morales also told the trial court that Mother had not attended any prior scheduled assessments. Additionally, during the pendency of the case, Mother had at least nine positive drug tests and two drug tests she did not attend, which are presumed positive. The two most recent positive results were for marijuana and the other prior positive results were for methamphetamine. Morales opined that Mother's drug issues continued.

Morales also explained that Mother was still completing her parenting classes, that she never completed her psychological evaluation, and that she had not refrained from criminal activity. Mother also did not provide Morales with any proof of employment or social security payments. Mother missed more visits with L.A.T. than she attended, but Morales did state that Mother had been more consistent in her visits since January 2019. Morales stated that Mother does well with L.A.T. during the visits, but the visits only last one hour at a time. Morales also visited Mother's home, which she stated was cluttered and not childproofed. Morales was also concerned by two large dogs that jumped on

5

her, and resided inside the home.

Morales described L.A.T. as very bonded with Taylor and his family, wants to be with them, and calls Taylor and his wife "dad" and "mom." Morales believes that L.A.T. does not have any issues currently from Mother's drug use, but it is not in L.A.T.'s best interest to be with Mother. She stated the Department has documented Mother's poor pattern of behavior since 2011, and Mother has not changed. Morales does not feel it would not be fair to L.A.T. to be kept in that type of environment. Morales stated that the Department's goal is now relative adoption.

On cross-examination, Morales stated she believed Mother's drug use affected her ability to complete the services and is concerned about Mother's newfound motivation to go to inpatient drug rehabilitation. Morales did not have any documentation of L.A.T.'s initial reaction to seeing Mother, but agreed there were no notes of concern. She also discussed that Mother has not shown she can have unsupervised visitation or visits out of the office with L.A.T.

Taylor testified regarding L.A.T. Taylor explained that he and his wife were L.A.T.'s guardians and they assumed guardianship of L.A.T. shortly after his birth; L.A.T. was one year and one month old at the time of the hearing. L.A.T. had some medical issues early in his life due to the drugs that were found in his system, but he was in normal health by the time of trial. Taylor explained the L.A.T. does occupational and physical therapy two times per month and is now walking, talking, and can eat solid food. Taylor told the trial court that L.A.T. exhibits negative consequences from visits with Mother, such as a runny nose due to her cigarette smoke, irritability, and trouble sleeping. He explained that his family loves L.A.T. and they want to adopt him if Mother's parental

6

rights are terminated.

At the end of the hearing, the Department asked the trial court to terminate Mother's rights. Mother asked for an extension of the case. The trial court issued a judgment terminating Mother's rights under § 161.001(b)(1)(E) and (O) and deemed termination in L.A.T.'s best interest. *See id.* This appeal followed.

## II.   SUFFICIENCY OF THE EVIDENCE

By her first issue, Mother alleges evidence of drug use alone is not enough to support the trial court's findings and to terminate her parental rights. Additionally, by her third issue, Mother argues that termination of her parental rights is not in L.A.T.s best interest.

## A.   Standard of Review and Applicable Law

A court may order the termination of a parent-child relationship if it is shown by clear and convincing evidence that a parent has met at least one of the statutory factors listed in § 161.001 of the family code, coupled with an additional finding by clear and convincing evidence that termination is in the child's best interest. *See id.* § 161.001(b)(1)–(2); *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019); *see In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002) (noting the two-prong test in deciding parental termination and that one act or omission of conduct satisfies the first prong); *In re E.M.N.*, 221 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.). "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. "This intermediate standard falls between the preponderance of the evidence standard in civil proceedings and the reasonable doubt

standard of criminal proceedings." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). This heightened standard of review is mandated not only by the family code, *see* TEX. FAM. CODE ANN. § 161.001, but also the Due Process Clause of the United States Constitution. *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)). "It is our obligation to strictly scrutinize termination proceedings and strictly construe the statute in favor of the parent." *In re L.J.N.*, 329 S.W.3d at 673.

In a legal sufficiency review, we look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We "must consider all of the evidence, not just that which favors the verdict." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Furthermore, we must assume that the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266. If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient and render judgment in favor of the parent. *Id.*

We review the factual sufficiency of the evidence in a termination proceeding by giving "due deference to a jury's factfindings," and we do not "supplant the jury's judgment" with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curium). In our review, we should "inquire 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [] allegations'" from the

8

entire record. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* However, in applying this standard, we must not be so rigorous in our analysis that the only fact findings that could withstand review are those established beyond a reasonable doubt. *Id.*

Because of the potential consequences for parental rights to a different child under § 161.001(b)(1)(D) or (E), due process requires us to review these grounds even when another ground is sufficient for termination. *In re N.G.*, 577 S.W.3d at 235. Section (D) or (E) findings must be reviewed by an appellate court, because "allowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights." *Id.* at 237.

## B.    Discussion

The trial court found that termination was appropriate under section 161.001(b)(1)(E) and (O), and was in L.A.T.'s best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), & (b)(2).

### 1.    Section 161.001(b)(1)(E)

Section 161.001(b)(1)(E) requires a showing that "the parent has: (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* Under subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill

9

effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Instead, endanger means to expose the child to loss or injury or to jeopardize his emotional or physical well-being." *Id.* The trial court must determine whether "evidence exists that the endangerment of the child's physical well-being was the direct result of Appellant's conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see In Interest of R.S.-T.*, 522 S.W.3d 92, 109–10 (Tex. App.—San Antonio 2017, no pet.) (regarding what the trial court can consider under subsection E for termination).

Termination under § 161.001(b)(1)(E) "must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required." *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Courts can consider conduct that did not occur when the child was present, including conduct before birth or after the child was removed from the parent's care. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The trial court found Mother committed conduct endangering the physical or emotional well-being of L.A.T. Testimony presented at the hearing showed that both Mother and L.A.T. tested positive for methamphetamine when he was born. Although Mother claimed she did not use methamphetamine after she discovered she was

10

pregnant, she also testified that she learned she was pregnant three months prior to L.A.T.'s birth. Reports to the trial court during the pendency of the case and the testimony before the trial court showed that L.A.T. was born with drugs in his system and experienced some medical effects from the exposure. The reports were evidence that Mother directly caused harm to L.A.T. and the trial court could consider them in making its determination. *See Boyd*, 727 S.W.2d at 533; *In re M.E.-M.N.*, 342 S.W.3d at 262.

Additionally, Mother had two prior children removed from her through involvement with the Department. Her oldest child, T.H.R., was removed as a baby due to Mother's drug use, and Mother continued to test positive multiple times for drugs during the pendency of that Department case. Mother stated she had voluntarily given up her parental rights to T.H.R. Mother's second child, R.A.K., had been removed by the Department due to domestic violence issues, according to Mother. She admitted she was positive for marijuana when she found out she was pregnant with R.A.K., but countered that she retained her parental rights to R.A.K. However, Mother had given her father guardianship rights to R.A.K. and had not seen R.A.K. since 2016. Mother's history with her two older children was testimony the trial court could also consider in making its determination. *See Walker*, 312 S.W.3d at 617.

Mother's drug use evidenced by her positive drug tests throughout L.A.T.'s case could also be considered by the trial court. *See In re X.R.L.*, 461 S.W.3d 633, 640–41 (Tex. App.—Texarkana 2015, no pet.) (stating that ongoing drug use during termination proceedings are relevant to the trial court's determination). She had at least nine positive drug tests according to Morales. Besides the positive drug tests, Mother committed criminal offenses that related to possession of a controlled substance.

Although Mother was due to attend an inpatient rehabilitation program through her criminal probation, she testified she had previously attended rehabilitation. Mother stated that she stayed sober and clean from drugs for a number of years, but it was clear in the last few years, she used methamphetamine frequently to the detriment of her children. A child can be endangered when the "parent's course of conduct creates a potential danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d at 477. Mother's previous rehabilitation trip and continued use of drugs showed a course of conduct that creates a danger Mother was aware of but disregarded. *See id.* The trial court could factor that into its determination.

Based on evidence presented to the trial court regarding Mother's history with the Department, her drug use, and her continuing course of conduct, the trial court's finding under § 161.001(b)(1)(E) that Mother placed L.A.T. in an environment that could endanger his physical or emotional well-being is supported by legally and factually sufficient evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). We overrule Mother's first issue.

### 2. Best Interest of the Child

We must next determine whether there was legally and factually sufficient evidence supporting the trial court's best interests finding. *See id.* § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 261. We must decide how to "reconcile 'a parent's desire to raise [the] child with the State's responsibility to promote the child's best interest.'" *In re O.R.F.*, 417 S.W.3d 24, 39 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012)). "There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and

12

convincing evidence to the contrary may overcome that presumption." *Id.* "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.)(quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1985)).

In deciding what is in the "best interest of the child," we look to the nonexclusive *Holley* factors:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In the Interest of B.R.*, 456 S.W.3d 612, 615–16 (Tex. App.—San Antonio 2015, no pet.) (quoting *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). "These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate." *In re D.C.*, 128 S.W.3d 707, 716 (Tex. App.—Fort Worth 2004, no pet.). "Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children." *Id.* "On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding." *Id.* "Additionally, the Family Code lists thirteen similar factors for determining the parents' willingness and ability to provide a safe environment." *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing TEX. FAM. CODE ANN. § 263.307).

**(a)    the desires of the child**

L.A.T. was a child of one year, one month old when the hearing commenced. Testimony from Morales was that Mother had proper interaction with L.A.T. and he seemed happy when he was with her. However, he is too young to voice his desires. This factor is neutral regarding termination. *See Holley*, 544 S.W.2d at 371–72; *see also In re M.R.*, No. 13-19-00178-CV, 2019 WL 4137661, *6 (Tex. App.—Corpus Christi–Edinburg August 30, 2019, no pet. h.).

**(b)    the emotional and physical needs of the child now and in the future**
**(c)    the emotional and physical danger to the child now and in the future**

The emotional and physical needs of the children are of paramount concern. The trial court can consider past events in making the determinations of best interest. *See May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied) (explaining that evidence of past misconduct or neglect is a permissible inference that a parent's future conduct may be measured by their past conduct).

The Department intervened and removed L.A.T. shortly after his birth due to the drugs in his system. However, Mother's history with the Department can be considered in making a best interest determination. *See id.* The Department intervened with Mother's two older children, which concluded with both children being removed from Mother's care. Drugs were the cause of the initial removal of T.H.R. Mother was still using drugs when she found out she was pregnant with R.A.K. and years later with L.A.T. Her previous involvement with the Department, previous trip to rehabilitation, criminal probation, and current case with the Department had not curtailed Mother's drug use. The trial court could reasonably have found that Mother failed to demonstrate any period

14

of sustained sobriety during the termination proceeding and continued to endanger L.A.T. These factors weigh in favor of termination.

**(d)   the parental abilities of the individuals seeking custody**
**(e)   the programs available to assist these individuals to promote the best interest of the child**
**(f)   the plans for the child by these individuals or by the agency seeking custody**
**(g)   the stability of the home or proposed placement**

"A child's need for permanence through the establishment of a 'stable permanent home' has sometimes been recognized as the paramount consideration in a best-interest determination." *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.). "Therefore, evidence about the present and future placement of the children is relevant to the best-interest determination." *Id.*

L.A.T. was placed with Taylor shortly after his birth. Taylor and his wife had two girls of their own. Reports submitted to the trial court and testimony at the hearing described the home in which L.A.T. lived. Taylor and his family treated L.A.T. like he was theirs. Taylor testified that his girls loved L.A.T. and enjoyed helping with his upbringing. Multiple witnesses testified to their observations of the Taylors with L.A.T. He was described as a healthy, happy baby who called the Taylors "mom" and "dad," lit up when he saw them, and wanted to be with them all the time. Taylor described the schedule he and his wife developed to help L.A.T. during his drug withdrawal and with his sleeping issues. He also kept the Department informed about doctor appointments and therapy sessions for L.A.T. The Taylors had expressed from the outset of the case that they would be interested in adopting L.A.T. and making him a permanent part of their family if Mother's parental rights were terminated. Taylor even told the trial court that he

15

would not be opposed to allowing Mother be a part of L.A.T.'s life if her rights were terminated, but only if she could stay clean and sober and get her life together. Based on the evidence and testimony presented, L.A.T. was in a stable, happy, permanent environment where he was cared for and loved. His need for permanency is a paramount consideration. *See id.* This factor weighs in favor of termination.

### 3. Summary

Applying the high standard of evidence required in parental termination cases, we hold that the evidence was legally and factually sufficient to support the trial court's findings of violations under § 161.001(b)(1)(E). *See In re H.R.M.*, 209 S.W.3d at 108. Mother's inability to stay off of drugs, avoid criminal prosecution, and history of similar issues with her two older children was sufficient evidence to support a finding based on § 161.001(b)(1)(E). *See* TEX. FAM. CODE. ANN. § 161.001(b)(1)(E); s*ee In re J.F.C.*, 96 S.W.3d at 266.

Additionally, regarding the best interest of the child, we find the evidence was also legally and factually sufficient. Not only was L.A.T. positive for methamphetamine upon birth, but Mother continued to have issues abusing drugs. The trial court gave Mother ample time and opportunity to comply with the family service plan, but based on the testimony, that compliance never occurred. The trial court finding was supported by clear and convincing evidence that L.A.T.'s best interest would be best served by termination of Mother's parental rights. We overrule Mother's third issue.[4]

---

[4] Although Mother also argued the trial court's finding that she violated § 161.001(b)(1)(O) was not valid, the trial court's finding under § 161.001(b)(1)(E) and best interest is sufficient to support the judgment. *See In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019). Therefore, we do not need to address Mother's second issue. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The judgment of the trial court is affirmed.

GINA M. BENAVIDES,
Justice

Delivered and filed the
19th day of September, 2019.