COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-18-00218-CV |
| IN THE INTEREST OF | § | Appeal from |
| K.A.C., K.C., M.C., AND E.C., | § | 65th District Court |
| CHILDREN | § | of El Paso County, Texas |
| | § | (TC # 2017DCM2545) |
| | § | |

## **O P I N I O N**

S.C. appeals from a judgment terminating her parental rights to K.A.C., K.C., M.C., and E.C.[1] We affirm.

### **FACTUAL SUMMARY**

Sherry is the mother of the four children who are the subject of this termination case, Kayla, Kim, Matt, and Edgar. J.L. ("Jack") is the father of Kayla, who was nearly five years of age at the time of the final hearing in November 2018. I.M. is the father of three-year-old Kim,

---

[1] To protect the identity of the children, the opinion will refer to S.C. by the fictitious name "Sherry", to K.A.C. by the fictitious name "Kayla", to K.C. by the fictitious name "Kim", to M.C. by the fictitious name Matt, and to E.C. by the fictitious name "Edgar". *See* TEX.R.APP.P. 9.8. The opinion will refer to Kayla's father, J.L., by the fictitious name "Jack". I.M. is the father of Kim, Matt, and Edgar, and the opinion will refer to him by his initials. Family members and foster parents will be referred to by their initials or fictitious names as indicated in the opinion.

two-and-a-half-year-old Matt, and one-and-a-half-year-old Edgar.[2]  Sherry gave birth to another child, G.C., during the pendency of this case.  G.C. tested positive for both amphetamine and methamphetamine when she was born in May 2018.[3]

The Department first became involved with Sherry and the children in April 2017 when Sherry gave birth to Edgar, and both Sherry and the newborn tested positive for methamphetamine.  Staff at the hospital made a report regarding the positive drug test results to the Texas Department of Family and Protective Services.  Sherry denied using drugs and claimed that they had testified positive solely because she had been in a car with someone who smoked methamphetamine.  Before going to the hospital, Sherry had left her other three children with H.M., the paternal grandmother of Kim and Matt.[4]  The Department could not place the children with H.M. because H.M.'s daughter also lived in the home and had a felony record.  I.M. was in jail in New Mexico as a result of a domestic violence incident with Sherry.  Sherry left the hospital against medical advice and the Department caseworker could not locate her.  Edgar, who had been born six weeks premature, remained in the hospital.  On April 12, 2017, the Department filed a petition for protection of the children, for conservatorship, and seeking termination of Sherry's parental rights.  That same day, the trial court signed an emergency order removing the children from Sherry's home and appointing the Department as the temporary sole managing conservator of the children.  When the children were placed in foster care on April 12, 2017, they were dirty and none of them had shoes.  Kayla, Kim, and Edgar were placed in one foster home, and Matt was placed in another foster home with C.C. and A.C. (the "Cooks").

---

[2]  The trial court terminated I.M.'s parental rights to Kim, Matt, and Edgar, but he has not appealed.

[3]  Sherry's parental rights to G.C. are not at issue in this appeal.

[4]  When the case began in April 2017, the Department was unaware that Jack was Kayla's father.  It was not until later in the case that Sherry informed the Department that Jack was Kayla's father.

Kim and Edgar[5] were placed with the Cooks on July 3, 2017, and G.C. was placed with them on June 1, 2018. The Cooks plan to adopt all four children if given the opportunity. Kayla was moved out of the first foster home due to behavioral issues and placed with foster parents L.R. and N.R. (the "Rogers") where she remained until the final hearing. Kayla's paternal grandmother, A.L. ("Angela"), intervened in the case and sought to be named permanent managing conservator of Kayla.

Following removal of the children, the Department developed a Service Plan for Sherry, and on June 2, 2017, the trial court made the Service Plan an order of the court. The Service Plan required Sherry to: (1) complete an OSAR drug and alcohol assessment and follow all recommendations; (2) complete parenting classes; (3) complete domestic violence classes; and (4) submit to random drug testing as requested by the Department. The Department requested that Sherry submit to drug testing at least once a month, but Sherry submitted to testing only two times during the eighteen months that the case was pending. While Sherry completed the OSAR assessment, she did not complete outpatient services for drug addiction at Pinnacle. In March 2018, Sherry went to the initial assessment at Pinnacle and attended one session, but she did not attended any other sessions. As a result, she was unsuccessfully discharged. Sherry made a second attempt to attend outpatient services at Pinnacle in May 2018, but she was unsuccessfully discharged again. The evidence showed that Sherry was continuing to use drugs during this time period because G.C., who was born in late May 2018, tested positive for both amphetamine and methamphetamine. Pinnacle refused to allow Sherry a third opportunity to complete outpatient services because of the two prior unsuccessful discharges. In July 2018, the caseworker located another provider of outpatient drug addiction services, Aliviane, but Sherry failed to attend.

---

[5] Edgar was discharged from the hospital on April 21, 2017 and placed with foster parents, but he was later placed with the Cooks.

Sherry provided the caseworker, Gloria Aguero, with a certificate that she had completed the parenting classes, but Aguero's investigation revealed that the provider did not offer parenting classes and was unfamiliar with the person who purportedly signed the certificate. Sherry also provided Aguero with a certificate from an online parenting class, but the Department does not accept certificates from online providers as it requires classroom participation. While Sherry claimed she had attended domestic violence classes, she did not provide a certificate of completion or a release so that Aguero could verify Sherry's attendance through the provider.

The Department also developed a visitation plan for Sherry, and the trial court ordered Sherry to consistently attend and participate in scheduled visitations. Although Sherry attended some visitations with the children, she also missed scheduled visits. On some occasions, she provided an explanation, but other times she simply did not attend.

The trial court also ordered Sherry to obtain and maintain appropriate housing and allow the CPS caseworker access to the home, to provide the Department with her contact information, and to maintain regular and consistent contact with the caseworker. Aguero testified that Sherry did not consistently maintain contact with her. In March 2018, Sherry had an apartment in Canutillo, Texas which Aguero visited six times. Aguero described the apartment as clean and appropriate for the children. At the time of the final hearing in November 2018, Sherry had moved and Aguero did not have an address for her. Aguero testified that Sherry had moved several times during the pendency of the case and she sometimes gave Aguero addresses which did not exist. Sherry did not attend the final hearing which took place in September and November of 2018.

The Department sought termination based on the predicate termination grounds set forth

in subsections D, E, N, O, P, and R of Section 161.001(b)(1). *See* TEX.FAM.CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P), and (R). The trial court found that the Department had proven by clear and convincing evidence that Sherry had: (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.00l(b)(l)(E); (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Sherry to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), and (3) used a controlled substance in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance, pursuant § 161.001(b)(l)(P). The court also found by clear and convincing evidence that termination of Sherry's parental rights was in the children's best interest. The court appointed the Department as the permanent managing conservator of Kim, Matt, and Edgar, but it appointed Kayla's paternal grandmother as her permanent managing conservator.

## PREDICATE TERMINATION GROUNDS

In Issues One through Three, Sherry challenges the legal and factual sufficiency of the evidence supporting the trial court's determination that her parental rights should be terminated based on subsections E, O, and P of Section 161.001(b)(1) of the Texas Family Code. Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the

petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id*. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). However, when a parent's rights have been terminated based on multiple predication grounds, including subsections D or E, we must address any sufficiency challenges directed at subsections D and/or E, even if the evidence is sufficient to support termination on other predicate grounds. *See In re N.G.*, No. 18-0508, 2019 WL 2147263 (Tex. May 17, 2019).

*Standards of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have

been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### Endangering Conduct -- Section 161.001(b)(1)(E)

In her first issue, Sherry contends that the evidence is legally and factually insufficient to support termination of her parental rights under Section 161.001(b)(1)(E). The trial court found by clear and convincing evidence that Sherry engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered the physical or emotional well-being of the children. The term "conduct," as used in Section 161.001(b)(1)(E), includes both the parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex.App.--San Antonio 2000, pet. denied). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d 703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.).

Under Section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.--Fort Worth 2003, no pet.). Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex.App.--El Paso 2015, no pet.); *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex.App.--El Paso 2012, no pet.). The conduct need not occur in the child's presence, and it may occur both before and after the child has been removed by the Department. *Walker v. Texas Department of Family & Protective Services*, 312 S.W.3d 608, 617 (Tex.App.--Houston [1st Dist.] 2009, pet. denied). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

Evidence of illegal drug use by a parent and its effect on a parent's life and his ability to parent may establish an endangering course of conduct under Section 161.001(b)(1)(E). *See In re J.O.A.*, 283 S.W.3d at 346; *In the Interest of K-A.B.M.*, 551 S.W.3d 275, 287 (Tex.App.--El Paso 2018, no pet.); *Walker*, 312 S.W.3d at 617. A mother's use of illegal drugs during pregnancy may constitute conduct that endangers the physical and emotional well-being of a child. *Cervantes-Peterson v. Texas Department of Family & Protective Services*, 221 S.W.3d 244, 253 (Tex.App.--Houston [1st Dist.] 2006, no pet.); *In re W.A.B.*, 979 S.W.2d 804, 807

(Tex.App.--Houston [14th Dist.] 1998, pet. denied). Further, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being. *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex.App.--Fort Worth 2011, pet. denied); *Cervantes-Peterson*, 221 S.W.3d at 253-54.

The Department became involved with the children and Sherry in April 2017 when Edgar was born with methamphetamine in his system. Sherry also tested positive for methamphetamine in the hospital. While Sherry claimed she was exposed to methamphetamine smoke while sitting in a car with a stranger shortly before the birth of Edgar, she did not offer any explanation for G.C.'s positive test for amphetamine and methamphetamine. The trial court was not required to believe Sherry's innocent-bystander explanation given that Sherry failed to submit to random drug testing during the case or complete outpatient services for drug addiction, and another child, G.C., was born with methamphetamine in her system just fifteen months after the case began. Further, Kayla's father Jack testified that he suspected Sherry was using methamphetamine while she was pregnant with Kayla. His suspicions were based on Sherry's admission to him that she had used methamphetamine in the past. Sherry's continued use of illegal drugs during her pregnancies with Edgar and G.C. in 2017 and 2018 is conduct that endangered the physical and emotional well-being of both unborn children. *See Cervantes-Peterson*, 221 S.W.3d at 253-54 (mother's continued use of cocaine over four pregnancies supported finding that she had engaged in an endangering course of conduct); *In re W.A.B.*, 979 S.W.2d at 806 (use of drugs during pregnancy is conduct that endangers the physical and emotional well-being of the unborn child). Further, any impairment Sherry experienced while using illegal drugs would have rendered her incapable of parenting her children. *See In re*

*A.A.M.*, 464 S.W.3d 421, 426 (Tex.App.--Houston [1st Dist.] 2015, no pet.). Despite being ordered by the trial court to comply with the Service Plan, Sherry did not take steps to address her drug use during the pendency of the case. The trial court could reasonably conclude from the evidence that Sherry would continue to use illegal drugs and endanger the children's well-being in the future. *See In re J.O.A.*, 283 S.W.3d at 346.

Having considered the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable fact finder could have formed a firm belief or conviction that Sherry engaged in a course of conduct endangering to the children's physical and emotional well-being under Section 161.001(b)(1)(E). *See In re J.F.C.*, 96 S.W.3d at 266; *In re K-A.B.M.*, 551 S.W.3d at 286-87; *In re A.A.M.*, 464 S.W.3d at 426. Accordingly, we find that the evidence is legally sufficient to support the trial court's finding.

In conducting the factual sufficiency review, we have considered all of the evidence but have not viewed it through the prism of "in the light most favorable to the finding." The evidence presented permits a reasonable fact finder to form a firm believe or conviction that Sherry engaged in an endangering course of conduct. Accordingly, we find the evidence factually sufficient to support the trial court's finding under Section 161.001(b)(1)(E). Issue One is overruled. Having found the evidence sufficient to support termination under Section 161.001(b)(1)(E), it is unnecessary to address Issues Two and Three.

**BEST INTEREST**

In Issue Four, Sherry argues that the evidence is legally and factually insufficient to support the best interest finding made under Section 161.001(b)(2) of the Family Code. A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115

S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors"). The Department is not required to prove all of these factors as a condition precedent to parental-rights termination. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re X.R.L.*, 461 S.W.3d 633, 639-40 (Tex.App.--Texarkana 2015, no pet.). In assessing the best interest finding, we also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the children. At the time of trial, Kayla was almost five years of age, Kim was three-years-old, Matt was two-and-a-half-years-old, and Edgar was one-and-a-half-years-old. All of the children were under the age of five at the time of trial, and there is nothing to indicate that any of them expressed his or her desires. Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. *See In re R.A.G.*, 545 S.W.3d 645, 653 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105

S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). The children are bonded to their mother, but they are also strongly bonded to their foster parents. Although Sherry missed several visits with the children, the evidence showed that the children looked forward to their visits with her. This factor is neutral.

The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re R.A.G.*, 545 S.W.3d at 653; *In re U.P.*, 105 S.W.3d at 230. Kayla exhibited aggressive behavior when she first went into the foster care setting, and she was diagnosed with intermittent explosive disorder by a psychiatrist, but a licensed professional counselor, Lizette Munoz, diagnosed her with adjustment disorder. Kayla made significant progress while living with the Rogers. Munoz recommended that Kayla continue to receive individual counseling and also participate in family counseling. Kim does not have any special needs, but she is receiving counseling therapy every two weeks, and the plan is for the counseling to continue. Matt takes medication for asthma, and both Matt and Edgar take medication for allergies. During the pendency of the case, Edgar received Early Childhood Intervention (ECI) services including speech and physical therapy. He completed physical therapy but will continue to receive speech therapy. The evidence does not support a conclusion that Sherry is able to provide a stable home for the children or meet their needs. Further, the evidence supports the trial court's finding that Sherry engaged in conduct endangering to the children's physical and emotional well-being. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). Based on the evidence, the trial court

- 12 -

could have determined that the second and third factors weigh in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002). The evidence supports a conclusion that Sherry has poor parenting skills and she did not complete the classes which could have improved these skills. This factor weighs in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. The Department developed a Service Plan for Sherry, but she failed to complete the majority of the requirements. Perhaps most significantly, she did not complete outpatient services for drug use and addiction. She also failed to complete the parenting and domestic violence classes. This factor supports the best interest finding.

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. Sherry did not appear for the final hearing in September 2018 or the continuation of that hearing in November 2018, and there is no evidence of her plan for the children. The Department recommended that Kayla be placed with her paternal grandmother, Angela, and that Angela be named her permanent managing conservator. It also recommended that Jack be named possessory conservator. There

- 13 -

is evidence that Kayla is attached to her grandmother and is bonded with Jack. Further, Angela had the ability to continue to provide for Kayla's therapeutic needs.

The Department's plan for Kim, Matt, and Edgar is for them to be adopted by the Cooks. Kim, Matt, and Edgar are doing well and are bonded with their foster parents who plan to adopt them. The trial court could have determined that the Department's plans for all four children are realistic and the proposed placements will provide them with stable homes. The sixth and seventh factors weigh in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Sherry endangered the children through her continued drug use over the course of at least two pregnancies. Based on this evidence, the trial court could have found that the existing parent-child relationship between Sherry and the children is not a proper one. This factor supports the best interest finding.

Finally, the ninth factor is whether there is any excuse for the parent's acts or omissions. Sherry's brief does not address this factor.

Sherry argues that the evidence showed the children are strongly bonded to her, she acted appropriately during her visits, and she had obtained an apartment which was appropriate for the children. While Sherry did have an apartment at one time, she had moved at the time of the final hearing and Sherry did not provide the caseworker with her new address. We agree with Sherry that the evidence shows the children are bonded to her. Although a child's love of a parent is an important consideration in determining the best interest of the children, it cannot override or outweigh evidence of danger to the child. *In re T.L.E.*, No. 14-18-01057-CV, 2019 WL 2181184, at *8 (Tex.App.--Houston [14th Dist.] May 21, 2019, no pet. h.). Sherry asserts that the Department failed to prove that the children faced an immediate danger to their physical

health or safety if they were returned to her.  The Department is not required to prove immediate physical danger to the children in order to show that termination is in the children's best interest. We found in our review of Issue One that the evidence supported the trial court's finding that Sherry, by continuing to use methamphetamine over multiple pregnancies, engaged in a course of conduct that endangered the emotional and physical health of the children.  Given Sherry's failure to address her issues with drug use, the trial court could reasonably conclude that Sherry would continue to use illegal drugs and endanger the children's well-being in the future. *See In re J.O.A.*, 283 S.W.3d at 346.  After considering the evidence related to the *Holley* factors, the trial court could have reached a firm conviction that termination of Sherry's parental rights is in the best interest of Kayla, Kim, Matt, and Edgar.  Issue Four is overruled.  The order terminating Sherry's parental rights to the children is affirmed.

June 4, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.