

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00440-CV

---

## IN THE INTEREST OF K.O. AND K.Q., CHILDREN

---

On Appeal from the County Court at Law No. 2
Randall County, Texas
Trial Court No. 82392L2, Honorable Dan L. Schaap, Sitting by Assignment

---

June 26, 2024

## MEMORANDUM OPINION

### Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Mother and Father, appeal from the trial court's order terminating their parental rights to their children, K.Q. and K.O., in a suit brought by Appellee, the Department of Family and Protective Services.[1] Mother and Father challenge the sufficiency of the evidence to support the trial court's findings under the predicate grounds and the finding that termination is in the best interest of the children. We affirm the trial court's judgment of termination.

---

[1] To protect the privacy of the parties involved, we refer to the mother of the children as "Mother," the father of the children as "Father," and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

**BACKGROUND**

The case involves the parent-child relationship between Mother and Father and K.Q. and K.O. K.Q. was born on May 2, 2021, and K.O. was born on June 30, 2022. In November of 2022, the Department became involved with Mother after allegations were made that Mother was working as a prostitute and that she had K.Q. and K.O. "with her in the hotel rooms, and in the different locations where she was working." Mother admitted to the Department investigator that she was recently arrested for prostitution but denied that the children were present when she was working. A few days later, Mother informed the investigator that she planned to relocate to Dallas. Mother then left the children with their maternal grandmother. The Department could not approve of the maternal grandmother as a placement because she had a history with the Department. The maternal grandmother asked a co-worker to take care of K.O. and K.Q. in Mother's absence. After a few days, the co-worker could not take care of the children any longer and delivered them to the Department. Mother would not disclose her location or contact information to the Department and told the investigator that "the Department could have" the children. Father, awaiting trial on felony charges, was interviewed in the Potter County Detention Center by the investigator. Father gave his mother's name as a possible caregiver for K.Q. and K.O., but she was unsuitable because she had a history with the Department.

The Department took K.Q. and K.O. into care because there were no suitable relatives available to care for them. The Department filed its petition for protection, conservatorship, and termination of Mother's and Father's parental rights. Following an adversary hearing, the Department was appointed temporary managing conservator and

2

K.Q. and K.O. were placed in a foster home. The associate judge conducted a bench trial on the Department's petition in November of 2023. Mother timely filed a request for a de novo hearing. The following evidence was presented at the hearings.

The Department developed family service plans for Mother and Father and the trial court ordered compliance with the plans' requirements. Among other things, the plans required Mother and Father to maintain stable housing and employment, complete a psychosocial evaluation, participate in individual counseling, maintain a drug-free lifestyle and abstain from the use of illegal drugs, submit to random drug screens, complete rational behavior therapy, participate in parenting classes, and maintain regular contact with the caseworker.

Mother satisfied her plan's requirements that she obtain a psychosocial evaluation, complete rational behavior therapy, participate in parenting classes, and complete individual counseling. She submitted to some but not all of the drug screens requested by the Department. She had weekly supervised visits with the children until June of 2023. Between June and September, Mother missed eight out of twelve scheduled visits, and she only exercised two visits between September and November. Mother has continued to live with maternal grandmother, who has a history with the Department. Mother has not been able to maintain stable employment, although she was employed at IHOP a week before the final hearing.

On March 10, 2023, Mother pleaded guilty to prostitution and was placed on deferred adjudication for one year. According to Mother, after Father went to jail, she turned to prostitution to make money so that Father could get released on bond.

3

Father was arrested and jailed in August of 2022 and pleaded guilty to multiple charges. He remained incarcerated for the duration of the underlying case. He was transferred to the Texas Department of Criminal Justice, Institutional Division (TDCJ) to serve concurrent sentences for burglary (four years), evading arrest with a motor vehicle (four years), and unauthorized use of a motor vehicle (six months). K.Q. was fourteen months old and K.O. was one month old when Father was incarcerated. After his incarceration, Father did not see the children. However, Father testified that he wants a relationship with K.O. and K.Q. after he is released from prison.

K.Q. and K.O. were placed in foster care in December of 2022. At the time of removal, both children were developmentally behind and K.O. was not receiving the medical attention he needed. The foster mother testified that K.O. had torticollis, limited range of motion, an untreated umbilical hernia, and a "severe flat spot" on his head. K.O. was referred to Early Childhood Intervention services and receives occupational and physical therapy. He is walking and "has come a long way." K.Q. was still drinking formula, struggling with chewing and swallowing, and suffered from extreme ear infections. K.Q.'s walking improved when her ear infections were treated. She receives speech therapy. The foster home is meeting all of K.Q.'s and K.O.'s physical and emotional needs. Both children are now active toddlers, healthy eaters, and free from ear infections. The Department has no concerns with the placement. The foster parents are willing to keep the children long term and want to pursue adoption.

The trial court terminated Mother's parental rights to K.Q. and K.O. on the grounds of endangering conditions, endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of the child.

4

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O).[2] The trial court also found that termination was in the best interest of K.O. and K.Q. *See* § 161.001(b)(2). The trial court terminated Father's parental rights to K.O. and K.Q. on the grounds of endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of the child. *See* § 161.001(b)(1)(E), (N), (O). The trial court also found that termination was in the best interest of K.O. and K.Q. *See* § 161.001(b)(2). The Department was appointed as permanent managing conservator of K.Q. and K.O. Mother and Father timely appealed the resulting judgment.

### STANDARD OF REVIEW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.,* 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

---

[2] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We affirm a termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

In reviewing for legal sufficiency, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.,* 283 S.W.3d 336, 344−45 (Tex. 2009). In reviewing for factual sufficiency, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that

6

a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

### APPLICABLE LAW

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the

7

child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.,* 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.,* 399 S.W.3d 322, 330–31 (Tex. App.—Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). "Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.R.J.M.*, 280 S.W.3d

8

494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.,* 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.).

A determination of best interest necessitates a focus on the child, not the parent. *Id.* at 927. Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

9

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3] "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d at 27). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

**Mother's Appeal**

The trial court terminated Mother's parental rights to K.O. and K.Q. on the grounds set out in subsections 161.001(b)(1)(D), (E), (N) and (O). Only one predicate ground is required to support termination when there is also a finding that termination is in the child's

---

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

best interest. *In re A.V.,* 113 S.W.3d at 362. Pursuant to the Texas Supreme Court opinion in *In re N.G.,* we review the trial court's findings under subsections 161.001(b)(1)(D) and (E) when raised on appeal, because a finding under those grounds may justify termination of parental rights to other children under subsection (M). *In re N.G.,* 577 S.W.3d 230, 235–37 (Tex. 2019) (per curiam); *see* § 161.001(b)(1)(M).

Sufficiency of the Evidence under Subsections 161.001(b)(1)(D) and (E)

In her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the termination of her parental rights under subsections (D) and (E). Because the evidence pertaining to subsections 161.001(b)(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.,* 280 S.W.3d at 503.

The Department presented evidence that shortly before K.Q. and K.O. were removed from her care, Mother was arrested and spent two days in jail. She pleaded guilty to the offense of prostitution and was placed on deferred adjudication for one year. According to Mother, she "fell in with the wrong crew." Father had gone to jail, and she was trying to make money to bond him out. She admitted that prostitution is a very violent and dangerous way to make a living and that she had been assaulted while prostituting. After the Department began its investigation, Mother was attacked by a group of women outside maternal grandmother's home where K.Q. and K.O. were living. Mother abruptly moved to Dallas, leaving K.Q. and K.O. with maternal grandmother. Mother refused further cooperation and told the Department it "could have [K.Q. and K.O.]." When K.Q. and K.O. were removed from Mother's care, they were developmentally behind and had unaddressed medical needs. Mother had not followed through with the exercises and

11

physical therapy that would have alleviated K.O.'s physical condition, which caused his ear to touch his shoulder. K.Q. suffered from chronic ear infections and she struggled with chewing and swallowing food. Mother was aware that K.Q. had speech delays, but she did not seek any assistance. While Mother completed some of her court-ordered services, she began missing drug tests and weekly visits with K.Q. and K.O. in June despite the Department providing transportation to her visits. She failed to maintain a home suitable for K.Q. and K.O. and had difficulty staying employed.

Based on the evidence, the trial court could have formed a firm belief or conviction that Mother knowingly placed or knowingly allowed K.Q. and K.O. to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct which endangered K.Q.'s and K.O.'s emotional and physical well-being. *See* § 161.001(b)(1) (D), (E). Mother engaged in prostitution and failed to appreciate that the risks associated with her criminal activity represent a risk to the children's physical and emotional well-being. *See In re N.K.*, 399 S.W.3d at 331. The trial court could have considered Mother's failure to complete significant requirements of her service plan as part of its endangering conduct analysis under subsection (E). Mother had made little progress in addressing the stability of the home or meeting K.Q.'s and K.O.'s emotional and physical needs. Mother's employment had changed at least three times and there were periods in which she was unemployed. Notably, she failed to comply with requested drug testing and missed numerous visitations with K.Q. and K.O. *See In re H.G.,* No. 07-21-00278-CV, 2022 Tex. App. LEXIS 2687, at *20 (Tex. App.—Amarillo Apr. 25, 2022, pet. denied) (mem. op.).

12

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Mother knowingly placed or knowingly allowed K.Q. and K.O. to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct which endangered K.Q.'s and K.O.'s emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. We overrule Mother's first issue. Having found that the evidence is legally and factually sufficient to support the trial court's finding under subsections 161.001(b)(1) (D) and (E), we need not address the portion of Mother's first issue challenging the trial court's findings under subsections 161.001(b)(1) (N) and (O). *See In re A.V.,* 113 S.W.3d at 363; *see also* TEX. R. APP. P. 47.1 (allowing courts of appeals to limit discussions in opinions to issues necessary to disposition of appeal).

Best Interest

In her second issue, Mother challenges the factual and legal sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2).

The evidence detailed above regarding Mother's involvement with prostitution, medical neglect of K.Q. and K.O., and failure to complete her service plan is probative to the best-interest inquiry. *See In re E.C.R.,* 402 S.W.3d at 249. A parent's failure to complete the court-ordered services when her parent-child relationship is in jeopardy creates a reasonable inference that the parent is incapable of availing herself of programs that promote the best interest of the child, both now and in the future. The factfinder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. *In re S.P.,* 509 S.W.3d

552, 558 (Tex. App.—El Paso 2016, no pet.). This evidence weighs heavily in favor of the best-interest finding.

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20. Mother began a new job the week before trial. She testified that she is living with maternal grandmother and her four siblings in a three-bedroom home. Mother testified that if K.Q. and K.O. were returned, she would continue working, enroll the children in daycare, and save money for a house. At the de novo hearing in January of 2024, Mother testified that she plans to take over a lease for a two-bedroom duplex. She has not completed any further services since the final hearing in November. She asked to be appointed a possessory conservator and to name the foster parents managing conservators of K.Q. and K.O. Conversely, the foster family has been providing a safe and stable environment for the past year, along with the structure and consistency that K.Q. and K.O. need. The foster parents have actively sought to meet the children's needs, including taking steps to remedy their developmental delays. The evidence shows that K.Q. and K.O. are strongly bonded with their foster family and are thriving in their care. The foster family plans to adopt them.

At the time of trial, K.Q. was two and a half years old and K.O. was seventeen months old and, thus, both too young to testify about their desires. When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time

with a parent. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Further, the Department's plan for K.Q.'s and K.O.'s adoption provides permanence and stability for the children and weighs heavily in favor of the trial court's conclusion that termination of Mother's parental rights is in their best interest.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of K.Q. and K.O. We overrule Mother's second issue challenging the best-interest determination.

**Father's Appeal**

Sufficiency of the Evidence under Subsection 161.001(b)(1)(E)

In his first issue, Father challenges the sufficiency of the evidence to support the trial court's finding that he engaged in conduct that endangered the physical or emotional well-being of K.O. and K.Q.

At the time of the removal, Father had been incarcerated for four months. According to the testimony of the investigator, Father's incarceration prevented him from being able to take possession of K.Q. and K.O., and his incarceration and inability to care for the children placed them at risk. He requested the children be placed with his mother, but she was ineligible due to her prior history with the Department.

Before his incarceration, Father lived with Mother and the children. He testified he was bonded with K.Q. and K.O., and that he fed them, changed their diapers, and bathed them. The last contact Father had with K.Q. and K.O. was August 1, 2022. At that time,

15

K.Q. was fourteen months old and K.O. was one month old. Father acknowledged that his criminal history did not reflect good parenting on his part. Father signed his plan of services, but did not complete any services required by the plan. On the day of trial, he enrolled in a cognitive intervention class to address his anger issues. Father was denied parole in March of 2023 due to his "repeatedly commit[ting] criminal episodes" which indicated "a predisposition to commit criminal acts upon release" and "excessive substances use involvement." He remained incarcerated at the time of trial and has a maximum sentence date ending August 1, 2026.

The testimony before the trial court established an endangering course of conduct by Father: he turned to criminal activity less than a month after the birth of each of his children—K.Q. in May of 2021 and K.O. in June of 2022; he committed three felonies in a fifteen-month period; his criminal record shows a pattern of conduct, not an isolated incident; his repeated criminal episodes and excessive substance use were the bases for his denial of parole; he did not stop engaging in criminal activity after K.Q. was born when he should have been aware that criminal conduct risked separating him from K.Q.; and other than K.O.'s first month of life, Father has been an absent parent because of his incarceration.

Father asserts he was the "non-offending" parent because he had no knowledge that Mother was not an appropriate caregiver or that she was leaving the children with inappropriate caregivers. We are unpersuaded by his argument. Father's lack of knowledge resulted from his criminal conduct that led to his incarceration and his indifference to his infant daughter and son while he was incarcerated. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) ("A parent's criminal history—taking into account the

16

nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment."). The caseworker testified that Father was unable to provide K.O. and K.Q. a safe and stable home, he had not visited or had any contact with the children, and his incarceration posed a continuing danger to them. "[I]ntentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well[-]being of the child." *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.— Amarillo 2001, no pet.) (per curiam); *In re A.F.,* No. 07-19-00435-CV, 2020 Tex. App. LEXIS 4152, at *17 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.) (parent's failure to regularly participate in visitation demonstrates lack of concern for the child's well-being and can reasonably be found to be emotionally endangering to child's well-being). Further, in our analysis under subsection (E), we may also consider Father's failure to complete relevant requirements of his service plan. *In re J.B.*, No. 02-22-00384-CV, 2023 Tex. App. LEXIS 812 at *21 (Tex. App.—Fort Worth Feb. 9, 2023, pet. denied) (mem. op.) (in subsection (E) analysis, trial court may consider failure to work service plan, even due to incarceration).

Viewing the evidence in the manner required by each standard of review, we conclude that it is both legally and factually sufficient for a reasonable trier of fact to form a firm belief or conviction that Father engaged in a course of conduct which endangered the physical or emotional well-being of K.O. and K.Q. We overrule Father's first issue. Having found that the evidence is legally and factually sufficient to support the trial court's finding under subsection 161.001(b)(1)(E), we need not address the portion of Father's

first issue challenging the trial court's findings under subsection 161.001(b) (1) (N) and (O). *See In re A.V.,* 113 S.W.3d at 363; TEX. R. APP. P. 47.1.

Best Interest

In his second issue, Father challenges the factual and legal sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2).

At the time of the hearing, K.Q. and K.O. were too young to express their desires. In such cases, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d at 118. The evidence showed that K.Q. and K.O. had spent minimal time with Father. In 2021, K.Q. was less than a month old when Father committed the second-degree felony offense of burglary. Approximately one year later, Father committed two additional felonies shortly after K.O. was born. Father was incarcerated throughout the underlying proceedings, having no contact with either of his children since August 1, 2022. The Department presented evidence that the foster family provided a safe, stable, and loving environment for K.Q. and K.O. and the children were thriving in that placement. The foster parents have actively sought to meet the children's needs, including taking steps to remedy their developmental delays.

As for K.Q.'s and K.O.'s physical and emotional needs and the physical and emotional danger to them, the trial court could have reasonably found that Father's minimal contact with the children constituted evidence that Father is incapable or unwilling to meet K.Q.'s and K.O.'s needs now and in the future. *See In re R.J.*, 568 S.W.3d 734, 752−53 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (minimal visitation relevant to

multiple *Holley* factors including child's current and future physical and emotional needs and parent's ability to care for child). In contrast, K.O. and K.Q. were doing well in their placement with a foster family. Given the evidence of Father's repeated criminal episodes, failure to complete the court-ordered services, and lack of contact with K.Q. and K.O., the trial court could have reasonably concluded that his actions "sp[oke] volumes about [his] parenting skills" and suggested "a substantial likelihood" that he "would be a danger to [K.Q. and K.O.] in the future or put them in a possibly harmful situation." *In re X.R.L.*, 461 S.W.3d 633, 640−41 (Tex. App.—Texarkana 2015, no pet.). Taken together, the trial court could have reasonably concluded that Father was not "willing and able to provide the child[ren] with a safe environment," a primary consideration in determining best interest. § 263.307(b).

Father's continued incarceration subjects K.Q. and K.O. to a life of uncertainty and instability. A parent's imprisonment is a factor that may be considered in determining a child's best interest. *In re M.L.,* No. 07-20-00195-CV, 2020 Tex. App. LEXIS 9483, at *16 (Tex. App.—Amarillo Dec. 4, 2020, no pet.) (mem. op.). Because of Father's continued incarceration, it is likely that his limited interaction with K.Q. and K.O. will continue for the foreseeable future. *See In re N.R.T.,* 338 S.W.3d at 677 (considering that appellants had "no meaningful contact" with their child when evaluating evidence relevant to best-interest determination).

Stability and permanence are paramount in the upbringing of a child. *In re J.D.,* 436 S.W.3d at 120. The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119−20. Father planned to "get a job, get a vehicle, and

get [K.Q. and K.O.] some clothes and stuff, and try to take care of them" upon his release from prison. The Department's plan for K.Q. and K.O. is continued placement with the foster family who has consistently and reliably met the children's physical, medical, and emotional needs. The Department's plan to pursue adoption by the foster family would provide permanence and stability for K.Q. and K.O.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Father's parental rights is in the best interest of K.O. and K.Q. We overrule Father's second issue challenging the best-interest determination.

## CONCLUSION

Having overruled the issues raised by Mother and Father, we affirm the judgment of the trial court terminating Mother's and Father's parental rights to K.Q. and K.O.

Judy C. Parker
Justice